**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DEREK MORTLAND,** | : | |
| | : | **Case No. 2:19-cv-01123** |
| **Plaintiffs,** | : | |
| | : | **Chief Judge Algenon L. Marbley** |
| **v.** | : | |
| | : | **Magistrate Judge Vascura** |
| **LOCAL CANTINA DUBLIN LLC,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

This matter is before the Court on Cross-Motions for Summary Judgment: Plaintiff's Motion for Summary Judgment (ECF No. 35) and Defendant's Motion for Summary Judgment (ECF No. 36). For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion and **GRANTS IN PART AND DENIES IN PART** Defendant's Motion.

## I.      BACKGROUND

When Derek Mortland visited the Local Cantina in Dublin, Ohio in February 2019, he encountered numerous barriers to accessibility. (ECF No. 1 ¶ 2). Mr. Mortland, who is a paraplegic and uses a wheelchair to travel in public, came to Local Cantina for lunch. (*Id.* ¶¶ 5, 14; ECF No. 35-2 ¶¶ 2–3).[1] He encountered numerous architectural barriers at the restaurant, which he claims denied him full and equal access to the property in violation of Title III of the Americans with

---

[1] In his Complaint, Mr. Mortland identifies himself as a "physically handicapped person," a "physically disabled person," and a "person with physical disabilities." (ECF No. 1 ¶ 5). This Court will use terms such as "physically disabled," "disabled," and "person with disabilities" interchangeably, as Mr. Mortland expressed that he views such terms are interchangeable and that "these words have similar or identical common usage and legal meaning." (*Id.*). This Court notes that there are different views on the utilization of "person-first" (e.g., person with a disability) versus "identity-first" (e.g., disabled person) language and style guides differ as to which language to use. Because Mr. Mortland has indicated that he views both types of language as appropriate, this Court will defer to his viewpoint in this Opinion.

Disabilities Act ("ADA"). (ECF No. 1 ¶¶ 15–16, 20–22). A month later, Mr. Mortland filed suit under the ADA and Ohio law against Local Cantina Dublin LLC and Bridge Park BBlock LLC, who leases the property to Local Cantina. Both Defendants filed answers to the Plaintiff's Complaint in May 2019. (ECF Nos. 9–10). Mr. Mortland then voluntarily dismissed Bridge Park BBlock, LLC from the suit. (ECF No. 16).

The parties engaged in discovery, including an inspection of the property by Plaintiff pursuant to Rule 34(A)(2) of the Federal Rules of Civil Procedure. (ECF No. 20). Mr. Mortland is also the President of Advanced Access, LLC, a consulting company specializing in accessibility and barrier removal. (ECF No. 35-2 ¶ 8). In his capacity as President, he is also acting as his own expert in this case. (*Id.* ¶ 9).[2] He performed his Rule 34 inspection of the premises on August 3, 2020 and subsequently drafted a Site Accessibility Survey of his findings. (*Id.* ¶¶ 11–12). In total, he enumerated fifty separate findings of noncompliance at Local Cantina's restaurant. (ECF No. 35-4). He has updated the report to indicate that certain findings have been remediated by the Defendant, such that these findings are marked as "CORRECTED" in his report. (*Id.*; ECF No. 35-2 ¶ 12). Mr. Mortland's report found numerous issues had not been remediated in the restaurant's dining, bar, and outdoor seating areas, as well as both restrooms. (ECF No. 35-4).

Local Cantina filed a motion for summary judgment in February 2020, which this Court denied as premature following the Plaintiff's motion to stay consideration pending discovery.

---

[2] Local Cantina contends that Mr. Mortland serving as his own expert create a conflict of interest, such that his lawsuit against Local Cantina "will result in a windfall to himself." (ECF No. 36 at 36). It emphasizes that he has three other open cases in this district and accuses him of weaponizing the ADA and "exploiting it for personal financial gain." (ECF No. 36 at 37). This Court first notes that Local Cantina has made no legal arguments about Mr. Mortland's suitability to serve as his own witness and cites no legal authority in support of this argument. Furthermore, this Court finds it unsurprising, unfortunately, that a wheelchair user may have three other ADA accessibility cases pending in the district *where he lives*. Private plaintiffs, such as Mr. Mortland, serve as an important enforcement mechanism for Title III of the ADA, as it is clear that allowing private entities to ensure their own compliance with the ADA has failed. Indeed, civil rights plaintiffs throughout history, from the Jim Crow South to the present day, may have been viewed by some as vexatious litigators for filing suits to enforce their civil rights.

(ECF Nos. 21–22, 28). The parties then cross-filed motions for summary judgment in October 2020. (ECF Nos. 35, 36). The cross-motions became fully briefed in December 2020. (ECF Nos. 37–40). The Defendant requested oral argument on its motion for summary judgment. (ECF No. 36). This Court heard oral argument in this case on Friday, July 2, 2021 and this matter is now ripe.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in the non-moving party's favor. *U.S. Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citing *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). This Court then asks "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986)). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. Evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

On a motion for summary judgment, the initial burden rests upon the movant to present the court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there remains a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (finding that after the burden shifts, the nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury"). In considering the factual allegations and evidence presented in a motion for summary judgment, the court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Self-serving affidavits alone, however, are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Wash. Cnty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013). "The mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Anderson*, 477 U.S. at 251.

The standard of review does not change when the parties file cross-motions for summary judgment. *See Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) ("[T]he standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions."). Thus, in reviewing cross-motions for summary judgment, a court must still "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

Where a judge, not a jury, will be the ultimate finder of fact, he need not grant a motion for

summary judgment if the necessary showing has not been made that there exists no genuine issue of material fact and that one party or the other is entitled to summary judgment. *See, e.g.*, *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 593 (6th Cir. 2001). In these circumstances, the case must still be sent to trial. *Id.* When one party fails to satisfy the burden of his own Rule 56 motion, this does not automatically indicate that the opposing party has satisfied her own burden such that summary judgment must be granted. 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2720. If a court finds that the facts are fully developed in a nonjury case, the court may proceed to decide the factual issue and render a judgment on the merits without any further delay "if it is clear that there is nothing else to be offered by the parties and there is no prejudice in proceeding in this fashion." *B.F. Goodrich*, 245 F.3d at 593 n.3 (quoting Wright et al., *Federal Practice and Procedure* § 2720). The necessary factual development may occur at the hearing on the cross-motions for summary judgment. Wright et al., *Federal Practice and Procedure* § 2720

## III.     ANALYSIS

### A.     The Americans with Disabilities Act and Implementing Regulations

When Congress passed the Americans with Disabilities Act over thirty years ago, it also set forth its motivations in doing so at the outset of this landmark legislation. Congress found that disabled people had been precluded from full participation in all aspects of society, isolated and segregated from society at large, and subject to discrimination "in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services." 42 U.S.C. §§ 12101(a)(1–3). "The ADA [was] geared to the future—the goal being that, over time, access will be the rule rather than the exception." H.R. Rep. No. 101-485, pt. III, at 91 (1990). Congress passed the ADA to provide a clear and comprehensive national mandate for the elimination of

discrimination against disabled people, as well as to provide "clear, strong, consistent, enforceable standards" addressing disability discrimination in all aspects of society. 42 U.S.C. § 12101(b). In 2008, Congress passed the ADA Amendments Act in direct response to decisions of the Supreme Court that "narrowed the broad scope of protection intended to be afforded by the ADA." ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 355. Thus, entities subject to the ADA, including places of public accommodation, have been on notice for thirty years that they must comply with the ADA.

The passage of the ADA came after decades of demonstrations by disability rights activists—and decades after the Civil Rights Act of 1965. The Rehabilitation Act, passed in 1973, only prevented discrimination by programs or activities receiving federal financial assistance.[3] Implementing regulations, however, were slow to follow and the goals of the legislation were stalled. In April 1977, disability rights activists began sit-ins across the country, demanding action by the government on regulation, including a sit-in at the U.S. Department of Health, Education, and Welfare building in San Francisco that continued for almost a month.[4] By April 28, 1977, the regulation was implemented, but private institutions and entities still remained largely unregulated.[5] The built environment of cities created barriers to accessibility. Curb cuts, now a ubiquitous feature of urban planning and design, became more widespread in the 1970s after frustrated wheelchair users and their companions in Berkeley, California quite literally took matters into their own hands at first, pouring their own cement on public streets, before turning to city council.[6] Several months before President George H.W. Bush signed the ADA into law in July

---

[3] 29 U.S.C. § 701(c).
[4] Julia Carmel, *Before the A.D.A., There was Section 504*, New York Times (July 22, 2020), https://www.nytimes.com/2020/07/22/us/504-sit-in-disability-rights.html.
[5] *Id.*
[6] 99% Invisible, *Curb Cuts* (Apr. 27, 2021), https://99percentinvisible.org/episode/curb-cuts/.

1990, over sixty people engaged in the "Capitol Crawl"—a striking demonstration putting the issue of accessibility on full display for the American public.[7] People abandoned their wheelchairs, walkers, crutches, and other mobility aids and crawled up the steps of the U.S. Capitol to show the inaccessibility faced by disabled people on a daily basis.[8]  When President Bush signed the law four months later, he announced: "Let the shameful wall of exclusion finally come tumbling down."[9]

Title III of the ADA seeks to eliminate this wall of exclusion in public places by prohibiting discrimination on the basis of disability in public accommodations. 42 U.S.C. § 12182(a). Under the ADA, a disabled person shall not be deprived of "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation" based on her disability. *Id.* Goods, services, facilities, privileges, advantages, and accommodations must be afforded to an individual with a disability in the "most integrated setting appropriate to the needs of the individual." 42 U.S.C. § 12182(b)(1)(B); *see also* 28 C.F.R. § 36.203(a). A Title III claim requires a plaintiff to establish that: (1) he or she is disabled within the meaning of the ADA; (2) the defendants own, lease, or operate a place of public accommodation; and (3) the defendants discriminated against the plaintiff within the meaning of the ADA. *See Young v. Kali Hospitality, LTD.*, No. 2:07-CV-395, 2010 WL 3037017, at *4 (S.D. Ohio Aug. 2, 2010). A private individual bringing suit under Title III may only seek injunctive relief. 42 U.S.C. § 12188(a)(2). At this time, there is no dispute as to whether Mr. Mortland is disabled or whether Local Cantina operates a place of public accommodation.[10] For purposes of

---

[7] Stephen Kaufman, *They Abandoned Their Wheelchairs and Crawled Up the Capitol Steps*, ShareAmerica, U.S. Dep't of State (Mar. 12, 2015), https://share.america.gov/crawling-up-steps-demand-their-rights/.
[8] *Id.*
[9] President George H.W. Bush, Remarks at the Signing of the Americans with Disabilities Act (July 26, 1990), https://www.ada.gov/ghw_bush_ada_remarks.html.
[10] The Defendant has not challenged Mr. Mortland's standing to bring suit under the ADA. Mr. Mortland asserts that he has standing to bring suit because he has visited the restaurant and bar and discovered barriers to access there, that

7

summary judgment, the sole issue is whether Local Cantina discriminated against Mr. Mortland because it does not comply with the physical accessibility requirements of the Americans with Disabilities Act and its implementing regulations.

The built environment has posed and continues to have a discriminatory effect on individuals with disabilities. 42 U.S.C. § 12101(a)(5). Under the ADA, discrimination includes the failure to remove architectural barriers in existing facilities "where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). For new construction and alterations to existing public accommodations and commercial facilities, Title III provides that "a failure to design and construct facilities for first occupancy [after January 26, 1993] that are readily accessible to and usable by individuals with disabilities" will constitute discrimination for purposes of § 12182(a). 42 U.S.C. § 12183(a)(1). Thus, Title III "imposes different requirements on 'existing facilities' than it does on 'new construction' where architectural barriers must be removed from existing public accommodations when readily achievable" and new establishments, "whether a public accommodation or a commercial facility, must be designed and constructed in a manner readily accessible to and usable by those with disabilities." *Mortland v. Hotel Stow, L.P.*, No. 5:19CV02019, 2020 WL 7074714, at *3 (N.D. Ohio Dec. 3, 2020) (quoting *Paralyzed Veterans of Am. v. Ellerbe Becket Architects & Eng'rs, P.C.*, 950 F. Supp. 393, 395 (D.D.C. 1996)); *see*

---

he will return to eat and drink as a guest if the establishment is made fully accessible to wheelchair users, that he will be continually subject to the architectural barriers until affirmative steps are taken to remedy them, and that the lack of ADA compliance continues until this day. (ECF No. 35-1 at 6–8). In the ADA context, a plaintiff must establish a likelihood of returning to the defendant's business to demonstrate a real threat of future harm. *See Judy v. Pingue*, No. 2:08-CV-859, 2009 WL 4261389, at *2 (S.D. Ohio Nov. 25, 2009). The plaintiff must also have actual notice of noncompliance to show a concrete and particularized standing, such as encountering the architectural barrier or having actual knowledge of it. *See Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 579–80 (6th Cir. Sept. 4, 2014). To determine whether an ADA plaintiff's likelihood of returning to a defendant's facility is sufficient to confer standing, courts have considered: "(1) the proximity of defendant's business to plaintiff's residence, (2) the plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." *Id.* (quoting *D'lil v. Stardust Vacation Club*, No. 2:00-CV-01496, 2001 WL 1825832, at *3 (E.D. Cal. Dec. 21, 2001)). This Court finds that Mr. Mortland has established standing because he lives within thirty minutes of the establishment, has patronized the business, and affirmatively plans to return once the establishment is accessible.

*also* 28 C.F.R. § 36.401(a)(1) ("[D]iscrimination for purposes of this part includes a failure to design and construct facilities for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities.").

To be readily accessible, "any part of a newly constructed or altered facility must be constructed in conformance with the [ADA Accessibility Guidelines or] ADAAG." *Cohan v. MMP (Detroit Livonia) Propco, LLC*, No. 18-13396, 2019 WL 4439521, at *2 (E.D. Mich. Sept. 16, 2019) (quoting *Mote v. City of Chelsea*, 252 F. Supp. 3d 642, 649 (E.D. Mich. 2017)). Any new construction shall comply with the 2010 ADA Standards for Accessible Design ("2010 Standards") where the start of physical construction occurred on or after March 15, 2012, or the relevant permitting deadlines for the facility fall on or after September 15, 2010. 28 C.F.R. § 36.406. The 2010 Standards encompass both the Title III regulations at 28 C.F.R. part 36, subpart D and the 2004 ADA Accessibility Guidelines ("ADAAG") at 36 C.F.R. part 1191, appendices B and D.[11] The ADAAG presents specific guidelines, including measurements, for public accommodations. Any item that is inconsistent with the ADA Standards constitutes a prima facie architectural barrier. *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 947 (9th Cir. 2011) ("Because the ADAAG establishes the technical standards required for 'full and equal enjoyment,' if a barrier violating these standards relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA."). The standards at issue in the case *sub judice* will be introduced *infra* when analyzing the parties' cross-motions for summary judgment.

The only exception to full compliance with the 2010 Standards is in instances of structural

---

[11] The 2010 Standards are accessible online in PDF format from the Department of Justice. *See* Dep't of Justice, *2010 ADA Standards for Accessible Design* (Sept. 15, 2010), https://www.ada.gov/regs2010/2010ADAStandards/2010ADAStandards.pdf.

impracticability. 28 C.F.R. § 36.401(c). Structural impracticability encompasses "those rare circumstances when the unique characteristics of terrain prevent the incorporation of accessibility features." 28 C.F.R. § 36.401(c)(1). In such rare circumstances, compliance with the ADA and its regulations is required to the extent it is not structurally impracticable, such that any portion of the facility that can be made accessible shall be made accessible. 28 C.F.R. § 36.401(c)(2). Mr. Mortland has submitted evidence from the Franklin County Auditor's office that the building in which Local Cantina is located was built in 2017. (ECF No. 35-3). There is no dispute of fact as to the year in which the building was constructed and the Defendant presents no argument that compliance with the 2010 Standards is structurally impracticable. This Court finds as a matter of law that Local Cantina is required to be in full compliance with the 2010 Standards because the physical construction occurred on or after March 15, 2012.

## B. Remediation Efforts and Mootness

Local Cantina argues that it is entitled to summary judgment because no genuine issue of material fact exists regarding whether it has brought its restaurant into compliance with the ADA, thereby rendering Mr. Mortland's claims moot. (ECF No. 36). In support of its arguments about compliance, Local Cantina submitted an architect's report and architect's affidavit to that effect. (ECF Nos. 36-1 & 36-2). Specifically, architect Lee Martin attests that "[m]odifications made by Local Cantina addressed each of the concerns raised" by Mr. Mortland and that the restaurant responded to the suit by "making reasonable accommodations in various area within the restaurant." (ECF No. 36-1 at 3). He concludes that the disputed areas comply with "applicable regulations, codes and design standards." (*Id.*). Mr. Mortland argues that genuine issues of material fact exist as to the Defendant's compliance with Title III of the ADA. (ECF No. 38 at 3). The Plaintiff also notes that voluntary cessation of a practice at issue by a litigant will not moot a case,

unless it falls into the "rare instance where 'subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" (ECF No. 38 at 8 (quoting *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 473 (6th Cir. 2008)).

Mootness is "the doctrine of standing set in a time frame." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)). This doctrine implicates a court's jurisdiction to hear a case; if an issue is no longer "live," then there is no case or controversy for a court to adjudicate. *See Gentry v. Deuth*, 456 F.3d 687, 693 (6th Cir. 2006). A defendant's voluntary cessation of a challenged practice, however, does not render a case moot. *See Brunner*, 548 F.3d at 473 (citing *Ammex, Inc. v. Cox*, 351 F.3d 697, 704 (6th Cir. 2003)). As stated by Plaintiff, voluntary cessation only moots a case in rare instances where "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Brunner*, 548 F.3d at 473 (quoting *Akers v. McGinnis*, 352 F.3d 1030, 1035 (6th Cir. 2003)). If a party asserts the mootness doctrine, she bears a "heavy burden" of persuading a court that the conduct at issue cannot be expected to start anew. *Akers*, 352 F.3d at 1035.

Plaintiff asserts that the Defendant has not carried its burden of showing mootness because the expert has offered no admissible measurements or evidence to substantiate its expert's claims of ADA compliance. (ECF No. 38 at 8–9). The Plaintiff notes that the expert's report includes photographs, but these photographs provide no measurement verification that would allow this Court or the Plaintiff to verify whether the photographs in fact show ADA compliance. (*Id.* at 8–10 (discussing photographs at issue)). Since the Defendant bears the heavy burden of demonstrating mootness, the Plaintiff asserts that it cannot be determined that the noncompliant conduct has been corrected and, if it has been, that the alleged noncompliance cannot reasonably

11

be expected to recur. (*Id.* at 10).

Mr. Martin, on behalf of Defendant, asserts that Local Cantina has made "reasonable accommodations" for people with disabilities and that the interior of the restaurant conforms to the requirements of the "ADA Design Guidelines" and the Ohio Building Code. As set forth above, public accommodations that have been recently constructed, such as Local Cantina, must be in full compliance with the 2010 Standards. The Ohio Building Code is not relevant to the mootness of Mr. Mortland's ADA claims. Reasonable accommodations are not the standard that public accommodations must meet under the ADA: they must be designed and constructed in a manner readily accessible to and usable by those with disabilities, which translates to conformity with the ADAAG. Mr. Martin has also included fifteen photographs with his affidavit, which he contends demonstrate current compliance with the ADA. (ECF No. 36-4).

Following his Rule 34 inspection, Mr. Mortland put together a Site Accessibility Evaluation identifying each of Local Cantina's barriers to access. (ECF No. 35-1 at 10). Of fifty total violation, Mr. Mortland seeks to hold Local Cantina liable for only twenty findings. (*Id.* at 11). Mr. Mortland has indicated that twenty of these findings have been adequately remediated and Mr. Mortland concedes mootness. He further does not seek to hold Local Cantina liable for nine violations because they fall within the purview of the owner of the property, not the Defendant, per a lease agreement. (*Id.*).

Even if they were admissible, the photographs submitted by the Defendant would be insufficient to establish mootness for the following reasons. Photograph 1 purportedly demonstrates that "wall-mounted coat hooks have been removed," but the walls are not visible in the photograph. (ECF No. 36-4). Photographs 2, 3, and 4 concern seating. No measurements have been provided and this Court cannot determine from the depiction of a single table whether the

12

restaurant provides the requisite proportion of accessible seating areas. (*Id.*). Additionally, the removal of booths could be a product of COVID-19 mitigation efforts and the Defendant has not met its burden of showing, now that mitigation requirements have been revoked, that the non-compliant booths will not be reinstalled. Photographs 5, 6, 7, 8, 9, 12, 13, 14, and 15 do not implicate any of the findings for which Mr. Mortland is seeking to hold Local Cantina liable or show remediations for which he has already conceded mootness. (*Id.*). Additionally, Photograph 5 has been excluded inadvertently from the filing. (*Id.*). Like the photographs of the seating area, Photograph 10 concerns the bathroom threshold. Mr. Martin attests that the thresholds provide a proper slope, but there are no measurements included. (*Id.*). This does not meet the burden of proving mootness. Photograph 11 is offered to establish clear floor space, but does not include any measurements or fully depict the space at issue.

Accordingly, none of the photographic evidence put forth by Defendant via Mr. Martin demonstrate that that the Defendant's remedial efforts have "made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." The photographs do not show unmistakable, full compliance with the ADA such that his claims are moot. At best, the Defendant's expert has raised genuine issues of material fact as to its total compliance with the 2010 Standards. The Defendant has, however, carried its burden to establish mootness as to two of Mr. Mortland's findings: the coat hooks and a restroom trash can.

Mr. Mortland seeks summary judgment on Finding 9 of his report, which concerns the height of coat hooks in the restaurant. When he inspected the restaurant, he found that the coat hooks were installed 60 inches above the finish floor. (ECF No. 35-4 at 46). He submitted two photographs of the coat hooks, including one in which he was taking a measurement of the height. (*Id.* at 46–47). To be accessible to a wheelchair user who is approaching from the side, an element

must be at least 15 inches above the ground and no more than 48 inches above the ground. 36 C.F.R., Part 1191, Appendix B § 308.3.1. Mr. Mortland recommended moving the coat hooks to no more than 48 inches above the finish floor. (ECF No. 35-4 at 46). Local Cantina asserts that the coat hooks have been permanently removed and has no plans to reinstall them. (ECF No. 36 at 19; ECF No. 37 at 8–9). In the appendix to his expert report, Mr. Martin also confirms the removal of the coat hooks. (ECF No. 36-3 at 7). Local Cantina asserts that it sees no need for the coat hooks in its restaurant. (ECF No. 37 at 9). It also notes that, if it were to reinstall coat hooks, it would install them in compliance with Section 308.3.1. (*Id.*). As to the coat hooks, the Defendant has shown the element has been removed and that it has no plans to reinstall them. The coat hooks were a minor feature of the premises and not fundamental to the operation of a restaurant, so this Court gives weight to the Defendant's assertion that it has no plans to reinstall the coat hooks at this time. As such, this Court finds that Mr. Mortland's claim as to Finding 9 is **MOOT**.

Similarly, Mr. Mortland found that the clear floor space was obstructed by a trash can in violation of the 2010 Standards. (ECF No. 35-1 at 15). Local Cantina argues that the trash can in the northmost restroom has been relocated, bringing it into compliance as to the requisite clear floor space. (ECF No. 36 at 26). The Defendant's expert also attests that the trash can has been relocated. (ECF No. 36-3 at 7). Like the coat hooks, this Court gives weight to the Defendant's assertion, supported by its expert, that this easy remedial fix has been made, rendering the issue moot. In his response to the Defendant's motion for summary judgment, Mr. Mortland takes issue with the form of Mr. Martin's expert report, but does not specifically raise any genuine issue of material fact that the relocation of the trash can has occurred. This Court finds that Mr. Mortland's claim as to Finding 27 is **MOOT**.

This Court accordingly **GRANTS** the Defendant's motion as to the coat hooks and trash

14

can and **DENIES AS MOOT** the Plaintiff's motion as it pertains to these elements.

### C. Exclusion of Photographs in Support of Defendant's Motion

Mr. Mortland challenges the admissibility of the photographs included with Mr. Martin's affidavit in support of the Defendant's motion for summary judgment. Plaintiff contends that the photographs were not disclosed with Mr. Martin's original expert report on September 30, 2020. (ECF No. 38 at 16). Mr. Mortland argues that these photographs do not depict how Local Cantina's restaurant looked on August 3, 2020, when he performed his own inspection of the premises. (*Id.*). Mr. Mortland seeks to exclude the photographs because they were not produced in accordance with the Court's discovery schedule and are not properly authenticated, such that anyone can tell who took the photographs or when they were taken. (*Id.*). Mr. Mortland further argues that, if the photographs are found admissible, he must be permitted to inspect the purported remediations to determine whether the restaurant is in fact compliant. (*Id.*).

Local Cantina argues that the photographs may be considered by this Court because they are being produced "solely in support of summary judgment" and, as such, are not one of the listed items required to be disclosed as part of an expert disclosure under Rule 26 of the Federal Rules of Civil Procedure. (ECF No. 40 at 7–8). Local Cantina argues in the alternative that this is governed by the expert rules on supplementation. (*Id.* at 8).

According to his report, Mr. Martin inspected the premises on September 27, September 30, and November 22, 2019; he was also present on July 29, 2020, when Mr. Mortland and his legal counsel reinspected the restaurant. (ECF No. 36-3 at 2–3). He also characterized Local Cantina as having "modified the facility in accordance with the ADA Standards for Accessible Design and the Ohio Building Code," including modifications to the entry, dining area, seating area, and restrooms. (*Id.* at 2). He stated that the modifications addressed the specific allegations

contained in the initial complaint. (*Id.*). In his report, Mr. Martin characterized any outstanding allegations by Mr. Mortland following the 2020 inspection as having been addressed, corrected, or otherwise remediated. (*Id.* at 4–5). He discussed several specific changes made to the premises, including changes in seating, signage height, and door thresholds. (*Id.*). He concluded by providing his professional opinion that the Defendant "has made reasonable accommodations for many people with disabilities it many areas of the facility." (*Id.* at 5). As noted by Plaintiff, the report contains no measurements or photographs.

When the Defendant filed its motion for summary judgment, it attached Exhibit 2, which was comprised of a two-page affidavit by Mr. Martin and the fifteen photographs now at issue. (ECF No. 36-2). In the affidavit, Mr. Martin sets forth his credentials and his multiple inspections of the premises. (*Id.*). He also stated that Local Cantina modified the facility to address Mr. Mortland's allegations and come into compliance with the ADA Standards for Accessible Design and the Ohio Building Code. (*Id.*). He then concluded by attesting that "at this time all claimed violations alleged by Mr. Mortland have been addressed and are currently in compliance with the ADA," as demonstrated by the attached photographs. (*Id.*). The fifteen photographs then followed.

When filing a motion for summary judgment, a party must support factual assertions by citing to particular parts of materials in the record, including affidavits; a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible. Fed. R. Civ. P. 56(c)(1–2). An affidavit used to support a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Plaintiff asserts that the photographs attached to Mr. Martin's affidavit cannot be relied upon by this Court because they are inadmissible. Their purported inadmissibility stems from the fact that

16

they support the expert's opinion or affidavit, but were not disclosed to the Plaintiff at the time of expert disclosures.

Rule 26(a)(2) governs expert disclosures, including which witnesses must provide a written report, such as Mr. Martin. Any written report must contain "(iii) any exhibits that will be used to summarize or support them." (*Id.*). Parties must supplement their disclosures when required under Rule 26(e). These photographs were appended to an affidavit by Mr. Martin, the Defendant's expert, and were used to support or illustrate his conclusions that Local Cantina is in compliance with federal law. As such, the photographs are governed by Rule 26(a)(2)(B) and were to be disclosed at the deadline. A failure to comply with information as required by Rule 26(a) and Rule 26(e) triggers the sanction of exclusion, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The potentially sanctioned party bears the burden of proving substantial justification or harmlessness. Otherwise, the sanction of exclusion is automatic. *See Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004). "District courts have broad discretion to exclude untimely disclosed expert-witness testimony." *Pride v. Bic Corp.*, 218 F.3d 566, 578 (6th Cir. 2000). Local Cantina has not carried its burden of proving substantial justification or harmlessness.

The photographs will only be admissible, then, if they are a proper supplementation. Federal Rule of Civil Procedure 26(e) requires parties to supplement an expert report prior to the deadline for pretrial disclosures when the party learns that, in some material respect, the disclosure is "incomplete or incorrect." This Court has previously interpreted Rule 26(e) as being "limited to 'correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'" *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, No. 2:18-md-2846, 2020 WL 1154809, at *4 (S.D.

Ohio. Mar. 10, 2020) (quoting *Winter Enters., LLC v. W. Bend Mut. Ins. Co.*, No. 1:17-CV-360, 2019 WL 3413907, at *8 (S.D. Ohio July 29, 2019). When confronted with an alleged "supplementation" made under Rule 26(e), district courts must ascertain whether the report is in fact a true supplement or an impermissible revision of the earlier report. *See id.* (quoting *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008)) ("Courts distinguish 'true supplementation' (e.g., correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to . . . 'supplement[]' an expert report with a 'new and improved' expert report.").

Local Cantina asserts that expert discovery is subject to supplementation, leaving this Court to make the inference that Local Cantina is arguing that the photographs are a proper supplementation. The addition of the photographs is not the type of supplementation contemplated by Rule 26(e), but rather an impermissible revision of the earlier report. The Defendant provides no reason that photographs demonstrating compliance could not have been taken or provided with Mr. Martin's original report, since he attested that the restaurant was in compliance at that time. The photographs attempt to bolster Mr. Martin's assertions, a month past the deadline, to create a "new and improved" expert opinion on the case. As this Court has previously held, this is not a permissible supplementation. *See, e.g.*, *In re Davol*, 2020 WL 1154809, at *4; "); *see also Matilla v. S. Ky. Rural Elec. Cooperative Corp.*, 240 F. App'x 35, 43 (6th Cir. 2007) (excluding supplementary report that was filed after the deadline for supplementation and party had possessed supplementary information throughout litigation). The new photographs appear to be an effort to "transform a conclusory report," which had no photographic evidence, into something more substantial after the fact. *Ullman v. Auto-Owners Mut. Ins. Co.*, No. 2:05-cv-1000, 2007 WL 1057397, at *5 (S.D. Ohio Apr. 5, 2007). Accordingly, this Court will not consider the photographs

in ruling on the Defendant's motion for summary judgment or considering the Defendant's response in opposition to the Plaintiff's motion because the photographs must be excluded under Rule 37(c)(1) of the Federal Rules of Civil Procedure.

### D. Compliance with the 2010 Standards

In his Motion for Summary Judgment, Mr. Mortland asserts that Local Cantina is noncompliant with the 2010 Standards in twenty ways (ECF No. 35-1 at 11–16). Because Local Cantina has failed to rebut Mr. Mortland's findings as to the premises, Mr. Mortland asserts that there is no genuine issue of material fact and he is entitled to summary judgment. (ECF No. 35-1 at 16). Mr. Mortland specifically contends that Mr. Martin's expert report does not adequately rebut Mr. Mortland's earlier findings because it lacks measurements, misapplies the correct standards, contains inconsistencies, and is inadmissible to the extent it testifies to a legal conclusion. (ECF No. 35-1 at 16–19). In its Motion for Summary Judgment, Defendant Local Cantina argues that no genuine issue of material fact exists as to whether it has brought its restaurant into compliance with the ADA. (ECF No. 36 at 12). First, the Defendant argues that modifying the bar area is not readily achievable and that Mr. Mortland cannot pursue his claim under the ADA on these grounds. (ECF No. 36 at 13–14). Second, Local Cantina argues that it has brought its restaurant into compliance in several areas and no genuine issue of material fact exists as to compliance. (ECF No. 36 at 14–34).

At the outset, this Court will reiterate the applicable legal standard for this case. It is undisputed that Local Cantina is a public accommodation, subject to Title III of the ADA, and operates its premises in a building constructed on or after January 26, 1993. As such, facilities must be "readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12183(a)(1). Because the premises were constructed on or after March 15, 2012, it must comply

with the 2010 Standards, which present specific guidelines, including measurements, for public accommodations. 28 C.F.R. § 36.406. This Court will now turn to the areas of purported noncompliance with the ADA, assessing each major 'category' of noncompliance in turn: the bar area, the indoor dining area, the outdoor dining area, and the restrooms.

### 1.    Bar Area

Mr. Mortland seeks to hold Local Cantina liable for five instances of noncompliance with the 2010 Standards related to the bar area. Mr. Mortland concludes in Finding 10 that there are no accessible dining surfaces at the bar. (ECF No. 35-1 at 12–13). Relatedly, in Finding 11, Mr. Mortland contends that the bar is also not accessible because there is not adequate clear floor space to approach the bar. (*Id.* at 13). In Findings 12 and 13, he challenges the height and knee and/or toe clearance of the bar. (*Id.* at 13–14). In finding 7, Mr. Mortland challenges the height of the group seating table in the bar area as inaccessible. (*Id.* at 12). In Finding 14, Mr. Mortland argues that the top of the bistro table dining surfaces is not compliant with height requirements. (*Id.* at 14). In its Motion, Local Cantina primarily argues that lowered bar seating is not readily achievable and thus it need not provide it to be compliant with the ADA. (ECF No. 36 at 13–14). This Court will address each area of noncompliance in turn with reference to Mr. Mortland's report and its findings.

### a.    Bar Seating

Mr. Mortland contends that the lack of lowered accessible seating spaces at the bar violates the 2010 Standards. In his Complaint, the Plaintiff alleged that there were no lowered accessible seating spaces at the bar. (ECF No. 1 ¶ 16(c)(i)). In Finding 10 of his Report, Mr. Mortland found that there were no accessible dining surfaces in the bar area. (ECF No. 35-4 at 48). He recommended that five percent of the bar seating be made accessible and served by a lowered

counter. (*Id.*). He classified this barrier priority as high, such that it should be rectified immediately. (*Id.*). He then included several site photos. The first photo depicts the bar surrounded by stools. (*Id.* at 49). Two photos show a measurement of the top of the bar at approximately 44 inches. (*Id.* at 51). In Findings 11, 12, and 13, he details the ways in which the bar itself does not comply with the ADA Standards. In Finding 11, he challenges the lack of adequate clear floor space for either a forward or side approach because of barstools and footrest piping. (ECF No. 35-1 at 13). In Finding 12, he challenges the height of the dining surface provided at the bar. (*Id.*). In Finding 13, he challenges the bar's non-compliance with knee and/or toe clearance requirements. (*Id.* at 13–14). This Court construes Finding 10 as a challenge to the location and proportion of accessible seating available, so as not to be redundant with the subsequent findings.

Local Cantina argues that it is compliant with the ADA because it offers accessible seating near the bar and that providing accessible seating at the bar would not be readily achievable. (ECF No. 36 at 13–14). Local Cantina also notes that a disabled person using a wheelchair can order from a bartender at the end of the bar where a silver cart is placed. (*Id.* at 14). Local Cantina further argues in its response to the Plaintiff's motion that Mr. Mortland's "demand" for lowered bar seating is "unreasonable as the requested modifications are not readily achievable." (ECF No. 37 at 5–6).

Local Cantina also references its limited capacity due to COVID-19 restrictions when asserting that is in compliance with the 5 percent accessible seating requirement. In at least one case, a court has considered a plaintiff's pre-COVID request for injunctive relief in an ADA case as if no pandemic were occurring because "[a]s soon as the need for social distancing is reduced" and the theme park's operations returned to normal, his request would be revived. *A.L. by and through D.L. v. Walt Disney Parks & Resorts Us, Inc.*, 469 F. Supp. 3d 1280, 1287 (M.D. Fla.

2020)). A similar reasoning must apply here: a business standing on its reduced COVID-19 operations to deflect whether its restaurant, at capacity, is ADA compliant is not the legal issue the Plaintiff brought before the Court. What's more, while the cross-motions were pending, Ohio lifted its COVID-19 restrictions, allowing restaurants to operate at full capacity if they so desire. At full capacity, Mr. Mortland contends that the restaurant does not offer 5 percent or more accessible dining surfaces dispersed throughout the restaurant. Local Cantina does not assert that it meets the 5 percent seating requirement when it can operate under full capacity.

Section 226 of the 2010 Standards governs Dining Surfaces and Work Surfaces. Under Section 226.1, "[w]here dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating *spaces* and standing *spaces* at the dining surfaces shall comply with [Section] 902." 36 C.F.R., Part 1191, Appendix B § 226.1. In turn, Section 902.1 advises that dining surfaces include, but are not limited to, bars, tables, lunch counters, and booths. Section 902 also provides requirements for dining surfaces' "toe clearance," "knee clearance," "height," and "clear floor or ground space." 36 C.F.R., Part 1191, Appendix B §§ 902.2–902.3. Plaintiff argues that, when Section 226.1 is read in tandem with Title III's requirement for integrated settings in 42 U.S.C. § 12182(b)(1)(B), a public accommodation must provide accessible spaces at each type of dining surface offered by the establishment. Because the bar at Local Cantina is a dining surface under the clear text of Section 902.1, the Plaintiff argues that Section 226.2's dispersion requirements mean that disabled people must be offered ADA-compliant spaces at the bar or else disabled people will be segregated from other patrons. (ECF No. 35-1 at 18–19).

This Court must begin by considering whether Section 226.2 of the 2010 Standards and the Title III requirement for integrated settings require the Defendant, as a matter of law, to provide accessible seating spaces at the bar. In short, the answer to this question is yes. Since 1991, public

accommodations have been required by law to "afford goods, services, facilities, privileges, advantages, and accommodations to an individual with a disability in the most integrated setting appropriate to the needs of the individual." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203. Discrimination under the ADA covers a wide swath of conduct, including "obviously exclusionary conduct," as well as "more subtle forms of discrimination – such as difficult-to-navigate restrooms and hard-to-open-doors that interfere with disabled individuals' 'full and equal enjoyment' of places of public accommodation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (quoting 42 U.S.C. § 12182(a)); *see also Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 n.4 (9th Cir. 2011) (noting that the ADA "does not limit its antidiscrimination mandate to barriers that completely prohibit access").

The ADA requires newly constructed public accommodations to be readily accessible to disabled people and its regulations instruct that 5 percent of all seating and standing spaces at dining surfaces should be accessible. Compliant dining surfaces must be dispersed throughout the space containing dining surfaces. 36 C.F.R., Part 1191, Appendix B § 226.2. If the bar contains sitting and standing dining spaces, then 5 percent of those spaces must comply with the 2010 Standards for accessibility. When coupled with the ADA's clear integration mandate, if dining and drinking is available at the bar for able-bodied patrons, then disabled people are likewise entitled to full and equal enjoyment of this privilege offered by the public accommodation. Enjoying a drink at a bar can be one of life's simple pleasures. While being able to drink at a bar may seem a trivial issue to some, the exclusion of disabled people from the experiences available to and enjoyed by able-bodied people without a second thought is exactly the type of discrimination that the ADA sought to combat. Other courts have held that public accommodations that offered features or services to the able-bodied population, but that were inaccessible to disabled patrons,

23

violated the ADA's integration mandate. *See, e.g.*, *Schutza v. City of San Diego*, No. 3:13-cv-2992, 2016 WL 11621283, at *5 (S.D. Cal. June 29, 2016) (noting that providing an alternate site for wheelchair users to participate in a single offered activity does not establish if other services, programs, and activities at public accommodation's main site are readily accessible to wheelchair users); *Bunjer v. Edwards*, 985 F. Supp. 165, 166 (D.D.C. 1997) (where drive thru was offered but inaccessible to deaf and hearing impaired individuals, restaurant discriminated against deaf patron by refusing to allow him to order at the first window via pen and paper).  If accessible dining surfaces are unavailable in certain areas of the restaurant, such as the bar, then the public accommodation does not comply with the dispersal requirement of the 2010 Standards.

Local Cantina does not argue that the bar itself is compliant with the 2010 Standards; it only argues that achieving compliance is not readily achievable. Defendant's reliance on the "readily achievable" standard has no relevance to this matter. At its passage, the ADA required newly constructed premises to be readily accessible; existing facilities were held to a different standard. The proprietor of a public accommodation should be aware that it must comply with a thirty-year-old law. This is especially true for public accommodations that are being constructed a quarter-century after its passage. This location of Local Cantina was constructed nearly five years after the cut-off for the 2010 Standards and over twenty years after the obligation began for newly constructed premises to be readily accessible. The "readily achievable" standard would only be relevant if this location was constructed before 1993 and had never been altered. A failure to remove architectural barriers in an *existing*, e.g. pre-January 26, 1993, facility would constitute discrimination where removal of architectural barriers is "readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). If an entity could demonstrate that removal of these barriers was not readily achievable, it would still be obligated to make any goods, services, facilities, privileges,

advantages, or accommodations available through any alternative methods that would be readily achievable. 42 U.S.C. § 12182(b)(2)(A)(v). The Defendant is not an existing facility for purposes of the ADA, so the "readily achievable" defense is unavailable to it.

Local Cantina also notes that it offers accessible seating adjacent to the bar. Section 5.2 of the ADAAG did exempt bars and restaurants from complying with counter height requirements if food or drink service was "available at accessible tables within the same area." 28 C.F.R. Part 36, Appendix D § 5.2. The 2010 Standards, with which Local Cantina must also comply, contain no such exception or alternative to businesses. The standard is full compliance with the mandate that facilities be readily accessible. The absence of this exemption as to bar service in the 2010 Standards supports this Court's reading that the dining surfaces and dispersal regulations, coupled with the ADA's integration mandate, requires newly constructed bar counters to have accessible seating. Accordingly, the availability of accessible seating near the bar does not create a genuine issue of material fact as to whether the bar itself contains the requisite amount of ADA accessible dining surfaces for patron use. Because the bar offers no accessible dining surfaces for wheelchair users, it does not comply with Section 226.1, which requires that five percent of dining surfaces be accessible. On this issue, the Plaintiff has established that he is entitled to summary judgment as a matter of law. As to Finding 10, Plaintiff's Motion for Summary Judgment is **GRANTED**.

The Plaintiff has set forth other ways in which the bar is noncompliant with the 2010 Standards. Because Local Cantina provides no accessible bar seating, it likely follows that the bar will not comply with other 2010 Standards for accessibility as to floor space, height of the dining surface, and knee and/or toe clearance. This Court will address these other findings in brief.

Public accommodations must provide clear floor or ground space of at least 30 inches by 48 inches. 36 C.F.R., Part 1191, Appendix B § 305.3; *see* 36 C.F.R., Part 1191, Appendix B

§ 902.2 (requiring dining surfaces to comply with Section 305). Mr. Mortland argues that Local Cantina's bar fails to comply with Section 305.3 due to the presence of bar stools and the fixed footrest at the bar. (ECF No. 35-4 at 57). Any accessible dining surface at the bar would need to provide adequate floor space for a wheelchair user to access those surfaces. The Defendant and its expert do not dispute the presence of the bar stools or the fixed footrest. The Defendant's expert argues that bar seating requirements are met by providing low seating in the bar area in accordance with Ohio Building Code 1108.2.9. (ECF No. 37-3 at 5). Plaintiff does not contend that the Defendant violated the Ohio Building Code but rather the ADA. The Defendant's expert also notes that "[n]o functions occur at the bar that do not occur elsewhere in the restaurant" and that a "portion of the bar along the west side is open and permits transfer of food, beverages and other items at a reduced height." (*Id.*). Local Cantina further elaborates that "a silver cart is placed at the end of the bar closer to the kitchen" where a wheelchair user could communicate with bartenders and staff, "allowing them to avail themselves of all of the functions one can receive at the bar." (ECF No. 37 at 6). The Defendant notes that the required floor space of Section 305.3 is provided in this area. (*Id.* at 7). Dining and drinking *at the bar*, however, is a function that wheelchair users cannot avail themselves of by communicating with a bartender at the silver cart. Accordingly, the Defendant has not created a genuine issue of material fact as to the requisite clear ground space for approaching an accessible dining surface, as there is no dining surface to access. This Court **GRANTS** summary judgment to Plaintiff as to Finding 11.

Section 902.3 establishes the proper height for accessible dining surfaces. To comply with the 2010 Standards, the tops of dining surfaces must be between 28 and 34 inches above the finish floor or ground. 36 C.F.R., Part 1191, Appendix B §§ 902.3. In Finding 12, Mr. Mortland contends that the bar is 44 inches high and is thus noncompliant with Section 902.3. (ECF No. 35-1 at 13).

He submitted photographs from his site visit in support of this finding. (ECF No. 35-4 at 62–63). He also includes several photographs that depict the bar from different angles and show that its height is uniform. (*Id.* at 61–64). The Defendant does not dispute that the bar fails to meet Section 902.3's requirements for height. There is no genuine issue of material fact as to the bar's noncompliance with the 2010 Standards for height and the Plaintiff is entitled to summary judgment as a matter of law.  Mr. Mortland's motion for summary judgment as to Finding 12 is **GRANTED**.

Section 306.3 sets forth the knee clearance for spaces under an element, such as a bar counter. Plaintiff argues that an accessible dining surface space would require a knee clearance of at least 27 inches high, 30 inches wide, and 19 inches deep to comply with Section 306.3. The 2010 Standards require that accessible spaces at dining surfaces provide knee clearance that is at least 11 inches deep at 9 inches above the floor and is at least 8 inches deep at 27 inches above the floor. 36 C.F.R., Part 1191, Appendix B § 306.3.3; *see* 36 C.F.R., Part 1191, Appendix B § 902.2 (requiring dining surfaces to comply with Section 306). Knee clearance must also be at least 30 inches wide. 36 C.F.R., Part 1191, Appendix B § 306.3.5. The Defendant has not created a genuine issue of material fact as to whether it complies with knee clearance, as there is no accessible dining surface available. This Court **GRANTS** summary judgment to Plaintiff as to Finding 13.

### b.     Bar Seating Area

In addition to the lack of accessible dining surface spaces at the bar itself, Mr. Mortland takes issue with two seating styles in the bar area: its bistro tables and its group seating table. He argues that neither are compliant with the 2010 Standards.

In Finding 7, he argues that the top of the table in the bar area that offers group seating is not within the compliant height range. Dining surfaces must be between 28 and 34 inches above

the finish floor or ground to comply with the 2010 Standards. 36 C.F.R., Part 1191, Appendix B §§ 902.3. The Plaintiff asserts that the table height is 42.5 inches and there are currently no lowered accessible seating spaces at this table. (ECF No. 35-4 at 39–41). He recommends that at least five percent of the seating at this table be lowered or for the whole of this table to come into compliance. (*Id.* at 39). In Finding 14, he indicates that the tops of the bistro tables are 44 inches above the floor, while Section 902.3 requires the tops of dining surfaces to be 28 inches to 34 inches above the floor. (*Id.* at 70). He recommends that one bistro table be lowered to the proper height and include the compliant knee and toe clearance for tables. (*Id.*).

The "bar area" is a nebulous concept and so it is difficult to determine as a matter of law whether Local Cantina is in compliance with the ADA or whether Mr. Mortland has met his burden of showing he is entitled to judgment as a matter of law on these findings. Mr. Mortland has not made clear to this Court that the bistro tables are the only tables provided to patrons in the bar area. The Defendant argues that it provides accessible seating "throughout the restaurant and on the patio," but it is unclear whether any accessible seating is dispersed within the bar area. (ECF No. 37 at 6). The Defendant also objects to Plaintiff's assertion that each style of table at the restaurant must comply with the ADA and its regulations. (*Id.* at 8). The Defendant's expert attests that roughly five percent of the seating in the bar area complies with the ADA. (ECF No. 37-3 at 4).

Unlike sitting at the bar itself, Mr. Mortland has not established that not being able to dine at a bistro-style table as opposed to any other type of table in the bar area prevents him from full and equal enjoyment of the space. This Court also cannot draw the inference in his favor that the only group seating he can avail himself of in the bar area is at the group table; he has not asserted or demonstrated that. Mr. Mortland has asserted that being unable to congregate at a bar, counter, or other area that other patrons have the choice and option of utilizing contravenes the integration

28

mandate of the ADA. Mr. Mortland has not, however, established what makes the seating in these types of tables distinctive, such as whether they are first-come, first-serve, whether they offer the only space for a large group to gather, or any other way in which these tables are distinctive in Local Cantina's atmosphere and business operations, such that his exclusion from them constitutes discrimination in the way that his exclusion from the bar itself does. At this point, Mr. Mortland has not carried his burden of establishing as a matter of law that there is no seating that complies with the 2010 Standards in the bar area.

Furthermore, this Court is uncertain as to what constitutes the bar area and whether it is distinctive enough from other seating areas inside that it must itself have five percent accessible tables as a matter of law. At least one court has flagged the difficulty of determining whether a "bar area" was accessible when the plaintiff had failed to define the term any further. *See Theodore v. 99 Restaurants, LLC*, No. 18-cv-368, 2019 WL 4861201, at *5 (D.N.H. Oct. 2, 2019) (explaining that "it is difficult to describe with any specificity a distinct area that might reasonably be called the 'bar area'" and noting that the distinction between "bar area" and the "dining area" was "far less clear"). On this record, the Defendant has raised a genuine issue of material fact that it has remediated the problem with accessible seating in the bar area. Accordingly, Mr. Mortland's motion for summary judgment as to findings 7 and 14 is **DENIED**.

### 2. Interior Dining Area

Mr. Mortland also seeks to hold Local Cantina liable for five instances of noncompliance with the 2010 Standards related to its indoor dining surfaces that are not located in the bar area. In Finding 3, Mr. Mortland contends that zero percent of Local Cantina's tables comply with Section 226.1. (ECF No. 35-1 at 11). In Finding 4, Mr. Mortland argues that the dining booths do not provide the requisite knee and toe clearance. (*Id.*). In Findings 5 and 6, he challenges the clear

floor or ground space provided at the booth seating as inadequate. (*Id.* at 11–12). In Finding 8, he argues that the knee clearance at the accessible table is not compliant with the 2010 Standards. (*Id.* at 12). In its Motion, Local Cantina notes that it is compliant in providing at least five percent accessible dining surfaces, with reference to its limited capacity in light of the COVID-19 pandemic. (ECF No. 36 at 16). The Defendant also argues its lowered tables have sufficient knee and toe clearance. (*Id.* at 17). This Court will address each area of alleged noncompliance in turn with reference to Mr. Mortland's report and its findings.

### a.     Proportion of Accessible Seating

In his Report, Mr. Mortland determined that the tables provided by Defendant did not meet the accessible tolerances of the 2010 Standards. (ECF No. 35-4 at 12). He claims that there are no accessible tables. (*Id.*). He then submitted a variety of photographs of the noncompliant tables. (*Id.* at 12–21). As an initial matter, this Court cannot discern from Mr. Mortland's filings how many tables are in the restaurant and what types of tables there are. In its own motion for summary judgment and its response to the Plaintiff's motion, Local Cantina asserts that it provides the requisite five percent seating. The Defendant refers to the COVID-19 limitations placed on its seating capacity and informs the Court that it provides 4 accessible seating spaces out of 77 total spaces, which is at least five percent. (ECF No. 37 at 5).

During the pendency of this Motion, COVID-19 seating limitations have been lifted and the Defendant makes no argument that addresses its compliance with the 2010 Standards at capacity. There is a genuine issue of material dispute raised, however. Mr. Mortland contends that there are no accessible seating surfaces at Local Cantina and Local Cantina alleges it has at least four. It is also unclear to this Court what the current state of affairs at Local Cantina is, in terms of what seating it now offers now that COVID-19 restrictions on restaurants have been lifted. On this

record, this Court cannot grant either party's motion for summary judgment on this issue. Local Cantina's motion is **DENIED** as to accessible interior seating because its mootness arguments have now been essentially mooted themselves. The Plaintiff's motion is also **DENIED** as Local Cantina has raised a genuine issue of material fact as to its compliance with interior accessible seating.

### b.   Booth Seating

Mr. Mortland challenges the booth seating in Findings 4, 5, and 6 as inaccessible because of issues with its clear floor space and toe and/or knee clearance. (ECF No. 35-1 at 11). Mr. Mortland asserts that altering one booth table to meet the 2010 Standards will bring Local Cantina into compliance. (ECF No. 35-4 at 33). As to Finding 4, Mr. Mortland provides photographic evidence of the booths in question and the measurements, which he asserts do not comply with the 2010 Standards. (ECF No. 35-4 at 22–32). In response, the Defendant disputes that its booth seating violates the 2010 Standards for toe and knee clearance. (ECF No. 37 at 7–8). As to findings 5 and 6, the Plaintiff argues that the clear floor space around booth tables is neither wide enough nor deep enough. (ECF No. 35-4 at 33–38). Defendant argues that its expert found that the clear floor space at the booths is both wide and deep enough to comply with the 2010 Standards. (ECF No. 37 at 6–7).

At least one other court has ordered remediation such that 5 percent of booth seating in each distinctive section of a restaurant be made accessible. *See Dytch v. Lazy Dog Restaurants, LLC*, No. 16-cv-03358, 2018 WL 9412715, at *8 (N.D. Cal. Apr. 18, 2018). In *Dytch*, the plaintiff argued that he was denied full and equal enjoyment of the restaurant where the booths were inaccessible because his inability to dine in a booth resulted in a less pleasant dining experience. *Id.* The booths provided "more privacy and intimacy" and also provided "peace of mind" to the

plaintiff, a wheelchair user, that he would not be seated at a freestanding table where neighboring tables would create maneuverability issues for him while dining. *Id.* Unlike the bistro tables, the distinctiveness of the booths is self-apparent.

Section 306.2 governs toe clearance. Space under an element between the finish floor and 9 inches above the finish floor must extend between 17 and 25 inches deep. 36 C.F.R., Part 1191, Appendix B §§ 306.2.2–306.2.3. Toe clearance must also be at least 30 inches wide. 36 C.F.R., Part 1191, Appendix B § 306.2.5. Similarly, knee clearance under an element between 9 and 27 inches above a finish floor must extend 25 inches maximum. 36 C.F.R., Part 1191, Appendix B § 306.3.2. Knee clearance must also be at least 11 inches deep at 9 inches above the finish floor and at least 8 inches deep at 27 inches in height. 36 C.F.R., Part 1191, Appendix B § 306.3.3. Knee clearance must also be at least 30 inches wide. 36 C.F.R., Part 1191, Appendix B § 306.3.5. Mr. Mortland asserts that the toe clearance is less than 17 inches deep and less than 30 inches wide, violating proper toe and/or clearance. He provides photographs that demonstrate approximately 10 inches depth and 28 inches width. The Defendant asserts that it now provides compliant tables, having removed the booths, and its expert attests that the Defendant provides at least five percent accessible seating inside. (ECF No. 36 at 16–17; ECF No. 36-3 at 4).

The Defendants have raised a genuine issue of material fact as to whether the new tables comply with the 2010 Standards. It is unclear to this Court, however, if the switch to these tables is a permanent feature or a product of the COVID-19 regulations, and Defendant's counsel was unable to answer this question at oral argument. If Local Cantina reinstalls the booths, then the same issues that Mr. Mortland demonstrated have not been remediated at all. At this time, this Court **DENIES** Mr. Mortland's motion for summary judgment as to Finding 4 but notes that his initial evidence demonstrates that the booths were noncompliant. The same issues present with

Findings 5 and 6, because Local Cantina has purportedly changed seating arrangements, though it is not established that this is permanent. For similar reasons, the Plaintiff's Motion for summary judgment is **DENIED**.

### c.        Lowered Tables

The Plaintiff also seeks summary judgment on the issue of noncompliant knee clearance at purportedly accessible tables in the dining area. The space under an element between 9 inches and 27 inches above the finish floor is known as "knee clearance" and must comply with depth and width requirements. 36 C.F.R., Part 1191, Appendix B § 306.3.1. Under Section 306.3.3, knee clearance under an element must be at least 11 inches deep at 9 inches above the finish floor and at least 8 inches deep at 27 inches above the finish floor. 36 C.F.R., Part 1191, Appendix B § 306.3.3. Knee clearance must necessarily be at least 27 inches high to comply with Section 306.3.3. Mr. Mortland's report and photographs demonstrate that the table measures knee clearance of only 26 inches. (ECF No. 35-4 at 42–45). He advocates that at least five percent of the lowered tables should be altered or replaced to comply with Section 306.3. (*Id.*). Local Cantina contends that it has remediated the accessibility areas from Mr. Mortland's complaint, including compliance with clear floor, ground space, and height for dining and work surfaces. (ECF No. 36 at 17). In support of its position, Local Cantina expert asserts that it has added or modified tables such that it complies with the standards. (ECF No. 36-2, App'x A at 1). The Plaintiff argues that the failure to include any measurement photos is dipositive to this Court granting summary judgment to the Defendant on this issue as this Court cannot verify whether the seating area is compliant. (ECF No. 38 at 9).

The failure to include any measurement verification as to the accessibility of these indoor tables forecloses the Defendant from meeting its burden that no genuine issue of material fact

exists. This Court takes note that the Defendant's expert, Mr. Martin, has attested that the tables are compliant with the ADA but is concerned by the lack of any measurements allowing the Court to independently verify such compliance. Mr. Martin's reliance on inapplicable standards elsewhere in his report raises concerns as to the veracity of his claims about compliance, without independent measurements for this Court to verify the credibility of those claims. Mr. Martin's attestation and the documented change in tables does, however, create a genuine issue of material fact as to Finding 8. Both motions for summary judgment as to the interior dining tables are therefore **DENIED**.

### 3.    Outdoor Dining Area

Mr. Mortland seeks summary judgment as to three findings of noncompliance with the 2010 Standards related to Local Cantina's outdoor dining area. In Finding 15, he challenges the outdoor seating as violating the knee clearance width requirements. (ECF No. 35-1 at 14). In Finding 16, he asserts that the outdoor dining area does not comply with the requirement of 5 percent of compliant tables, given the lack of proper knee clearance. (*Id.*). In Finding 17, he challenges the lack of a lowered surface at the "bar rail," an outdoor dining surface. (*Id.* at 14–15). Local Cantina argues that it has rectified the issue with the patio tables and cites to Mr. Martin's report. (ECF No. 36 at 9). Mr. Martin asserts that 5 percent of the seating in the patio area has been replaced with accessible seating, either via modifying the tables themselves or reconfiguring the location of seating within the premises. (ECF No. 36-3 at 4). As to the "bar rail," Local Cantina argues that it does not need to provide a lowered space because it provides the required amount of accessible seating on the patio in general. (ECF No. 36 at 19–20). It alternatively argues that modification of the railing is not readily achievable, which this Court has already found to be the incorrect standard for these premises and thus not applicable.

### a.     Outdoor Tables

This Court will first consider the two purported issues as to the tables located on the patio. Both parties seek summary judgment as to Findings 15 and 16 of Mr. Mortland's report. As mentioned, Mr. Mortland found that none of the tables had adequate knee clearance, as the tables only provided knee clearance that measured 21 inches wide. (ECF No. 35-4 at 74). Mr. Mortland also submitted photos that showing at least three identical tables on the patio. (*Id.* at 76–77). Because none of the tables provided adequate knee clearance, he also found that the patio did not provide an adequate proportion of accessible seating. (ECF No. 35-4 at 78–80). Local Cantina argues that these issues have been remediated by the replacement of tables to ensure adequate knee and toe clearance, thereby bringing it into compliance with the 5 percent requirement. (ECF No. 36 at 19).

As previously discussed, Section 306.3.5 of the 2010 Standards requires knee clearance to be at least 30 inches wide. 36 C.F.R., Part 1191, Appendix B § 306.3.5. In his report, Mr. Mortland put forth evidence that the tables on the patio only provided knee clearance that measured 21 inches wide. The Defendant asserts that it now provides compliant tables on the patio and its expert attests that the Defendant provides at least five percent accessible seating in this area. (ECF No. 36 at 19; ECF No. 36-3 at 4). The Defendant has raised a genuine issue of material fact as to whether the new tables comply with the 2010 Standards. Like Local Cantina's other arguments about its compliance with the 5 percent requirement, it is unclear to this Court if the restaurant would be in compliance now that the COVID-19 restrictions have been lifted. Elsewhere, Mr. Martin's report includes that caveat that COVID-19 "concerns and requirements" had altered the way the restaurant operated. (ECF No. 36-3 at 3). If the seating on the patio has returned to full capacity, it is unclear that Local Cantina still provides the requisite amount of accessible seating. At this

time, this Court **DENIES** Mr. Mortland's motion for summary judgment as to Findings 15 and 16, but notes that his initial evidence demonstrates that the patio tables did not provide adequate knee clearance and, as a result, that the patio did not have enough accessible seating as a result. For similar reasons, the Defendant's Motion for summary judgment is also **DENIED**.

### b. Outdoor Bar Rail

Mr. Mortland also challenges the patio's outdoor bar railing on a similar rationale to his challenges to the interior bar and bar area: there is no accessible space at this type of seating, violating the integration mandate of the ADA and the 5 percent requirement of the 2010 Standards. The Defendant again argues that 5 percent of its overall outdoor seating complies with the 2010 Standards, so no changes to the bar rail are necessary to comply with the 2010 Standards. (ECF No. 37 at 6). The Defendant's expert attests that roughly 5 percent of the seating in the outdoor area complies with the ADA. (ECF No. 37-3 at 4).

The outdoor bar rail raises similar issues and questions to the bar seating area. This Court does not have enough information about whether the patron experience at the outdoor bar rail is significantly different or diminishes the potential outdoor experience at Local Cantina, as compared to the adjacent tables. Mr. Mortland has not established what makes the bar rail distinctive, such as whether they are first-come, first-serve or whether they offer the only space for a larger group to gather. On this record, this Court cannot determine whether Plaintiff is entitled to summary judgment on this issue. Accordingly, Mr. Mortland's motion for summary judgment as to finding 17 is **DENIED**. At this juncture, this Court also cannot determine whether the Defendant is entitled to summary judgment because of the undeveloped record as to the distinctive features of the bar rail, if any, and how the ADA integration mandate should apply to this feature. Local Cantina's motion for summary judgment as to finding 17 is therefore **DENIED**.

### 4. Restrooms

Mr. Mortland identified multiple accessibility issues as to both restrooms at Local Cantina in his report. In both restrooms, he found compliance issues regarding the thresholds. In the northmost restroom, Mr. Mortland found that the slope of the threshold was too steep and that the threshold overall was too high. (ECF No. 35-1 at 15). In the southmost restroom, Mr. Mortland found that the threshold's vertical rise was too high and the threshold itself was also too high. (ECF No. 35-1 at 15–16). Local Cantina asserts that it had ordered a replacement threshold at the time of its expert's report and "[o]n final inspection, the threshold has been installed and the proper grade has been achieved" in both restrooms. (ECF No. 36 at 26–27, 29). The Defendant's expert also attests that the replacement thresholds had been ordered at the time of his report. (ECF No. 36-3 at 7–8). Mr. Mortland, having reviewed Mr. Martin's report, counters that his proposed remediation of the threshold issue "will create new barriers to access that do not currently exist." (ECF No. 35-2 ¶ 18). Mr. Martin notes that the new ramp will have a 1:12 pitch; Mr. Mortland highlights that this will result in an 8.33 percent slope in the door landing and maneuvering clearance which is to be level within 2 percent max in any direction under Section 402.2.5 of the 2010 Standards. Thus, even if the Defendant has installed these ramps as proposed by Mr. Martin, this does not create a genuine issue of material fact as to its compliance with the 2010 Standards. Rather, the Defendant's remediation fails to bring it into compliance and so the Defendant has not created a genuine issue of material fact as to Findings 29, 30, 34, and 47 by ordering and installing new thresholds. This Court **GRANTS** Mr. Mortland's motion for summary judgment as to Findings 29, 30, 34, and 47 and **DENIES** Local Cantina's motion as to these findings.

### E. Supplemental Jurisdiction

In its response to the Plaintiff's motion for summary judgment, the Defendant asserts that

it cannot proceed on its state law claims because this Court lacks supplemental jurisdiction. 28 U.S.C. § 1367 permits a federal district court to exercise jurisdiction over claims not otherwise within their adjudicatory authority "when those claims are so related to claims within federal-court competence that they form part of the same case or controversy." *Artis v. District of Columbia*, 138 S. Ct. 594, 597 (2018). If a district court dismisses all claims that enable it to exercise federal jurisdiction, it must dismiss the related state claims as well. *Id.* at 597–98. Because this Court still has jurisdiction over Mr. Mortland's surviving ADA claims, this Court may retain jurisdiction over his Ohio law claims, which stem from the same purported accessibility issues and as to which neither party sought summary judgment.

### F.    Attorney's Fees and Costs

Under the Americans with Disabilities Act, a court may allow a prevailing party to recover "a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. A party prevails for purposes of this provision when there is a "material alteration of the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604–05 (2001). The Sixth Circuit has found that a plaintiff "crosses the threshold to 'prevailing party' status by succeeding on a single claim, even if he loses on several others and even if that limited success does not grant him the 'primary relief' he sought." *Binta B. v. Gordon*, 710 F.3d 608, 620 (6th Cir. 2013) (quoting *McQueary v. Conway*, 614 F.3d 591, 603 (6th Cir. 2010)); *see also Fox v. Vice*, 563 U.S. 826, 834 (2011)) ("A court should compensate the plaintiff for the time his attorney reasonably spent in achieving the favorable outcome, even if 'the plaintiff failed to prevail on every contention.'") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).

In his motion for summary judgment, Plaintiff seeks an award of his attorney fees and litigation expenses as the prevailing party. (ECF No. 35 at 2). He does not, however, present any

arguments in support of this request in his memorandum in support of his motion. (ECF No. 35-1). The issue is instead raised by the Defendant's motion for summary judgment, wherein the Defendant argues that Mr. Mortland is not a prevailing party under the ADA, primarily based on its assertions that his claims have been mooted. (ECF No. 36 at 34). This Court has already found many of his claims have not been mooted by any purported remediations. In fact, this Court has granted Mr. Mortland's motion for summary judgment as to several of his findings. Mr. Mortland argues in response that "arguments over whether Plaintiff should receive prevailing party status is premature." (ECF No. 38 at 18). He instead notes that he will file a separate motion for attorney fees and costs when he seeks to recover and notes that "[l]ikely, a trial will be necessary to determine whether Plaintiff is the prevailing party." (*Id.* at 18–19). Accordingly, this Court **DENIES** the Defendant's motion for summary judgment as it pertains to prevailing party status and attorney's fees.

## IV. CONCLUSION

For the reasons discussed above, genuine issues of material fact exist concerning the Defendant's compliance with the ADA. This Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Summary Judgment (ECF No. 35) and **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment (ECF No. 36).

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: July 19, 2021**